371 P.2d 995

**Mrs. Jack LANCE, widow and sole surviving dependent of Sgt. Jack Lance, Deceased, Plaintiff-Appellant,**

**v.**

**NEW MEXICO MILITARY INSTITUTE, a State of New Mexico School for the teaching of military service, and Hartford Accident and Indemnity Co., a corporation, Defendants-Appellees.**

No. 6912.

Supreme Court of New Mexico.

May 21, 1962.

Rehearing Denied June 18, 1962.

Thomas B. Forbis, James M. H. Cullender, Roswell, for appellant.

Frazier & Cusack, Roswell, for appellees.

CARMODY, Justice.

The trial court entered judgment for the defendants under a claim for workmen's compensation in a death case, and the widow of the decedent appeals.

The basic claim of error has to do with the substantial evidence rule, although there are other allied questions relating to both the findings made and those refused by the trial court, estoppel, and the refusal to receive certain testimony.

The trial court made certain findings, which may be summarized as follows: Sergeant Lance was a member of the United States Army, stationed on the campus of the New Mexico Military Institute as an instructor in the Department of Military Science and Tactics. This department was staffed with members of the army and was not under the direction and control of the institute. That on December 12, 1959, Sergeant Lance was killed while flying an airplane over a tactical problem, which was under the control of the Department of Military Science and Tactics. That the airplane was rented by Sergeant Lance from the Aero Club of Walker Air Force Base. The court then proceeded to find that there was no contract to hire, express or implied, between Sergeant Lance and the institute; that the work being done by the sergeant at the time of his death was not at the instance or request of the institute; and that the institute had no right to control the actions or details of the work of the sergeant at the time of his death.

The circumstances upon which the above findings were based were, briefly, that Sergeant Lance held a private pilot's license and was desirous of obtaining as many flying hours as possible, in order to obtain a commercial license. He therefore discussed with some of the athletic officials at the institute the possibility of making flights to carry members of the coaching staff to various locations. An arrangement was made and Lance made several such flights, with the institute paying the rental cost of the plane, his hotel room and meals, and other necessary expenses. In addition, the sergeant discussed the matter with his commanding officer and, on the occasions when he was to make the flights, he was placed "on pass."

On a Saturday in the latter part of November, Sergeant Lance rented a plane and, taking one of the officers of the institute with him, flew over the cadets and dropped flour bombs during the performance of a tactical problem. The record is not absolutely clear as to how the payment for the plane was made, but apparently the charges were by the month, and the sergeant received a bill at the end of each month and paid the same, either with his

own funds, or from some other undetermined source. It should be observed, however, that the institute agrees that it paid for the rental of the plane during the coaching flights, and apparently the cost of the plane on the Saturday in November was included in this amount, although there is no direct evidence showing this.

On the first Saturday in December, the sergeant again flew a plane over the tactical problem, and on the second Saturday (being the fatal day), while in the process of so flying, was killed. There is no showing that the rental bill for December was ever paid by anyone.

It is admitted that the flights were not ordered by the Department of Military Science and Tactics, nor is there any evidence that they were ordered by the representatives of the institute. It would seem that the appellant contends that, inasmuch as the one flight made in November was apparently paid for by the institute, that therefore the two flights made in December, following exactly the same pattern, place him within the scope of employment, at least by implication, or, in any event, that the institute would be estopped to deny such scope of employment.

Appellant also argues that the finding of the court that the institute had no right to control the actions of the sergeant is an improper finding, because it is admitted that the sergeant was not under the control of the Department of Military Science and Tactics and that therefore, under the circumstances, he must have been under the control of the institute.

■ In the last analysis, appellant asserts that the flights over the tactical problem and the coaching staff flights were in the same category, and that therefore Lance was an employee of the institute. The trouble with this contention is that the trial court found otherwise, and practically all of the direct evidence supports such finding.

■ There are circumstances which might be construed to the contrary, but this court does not weigh the evidence, nor overturn findings, merely because there is a conflict between the evidence accepted by the court and that upon which one of the parties relied. Davis v. Hartley, 1961, 69 N.M. 91, 364 P.2d 349; New Mexico Bus Sales v. Michael, 1961, 68 N.M. 223, 360 P.2d 639; Maryland Casualty Company v. Jolly, 1960, 67 N.M. 101, 352 P.2d 1013.

Apparently, appellant urges that as long as Lance was not on military duty and was doing something related to the students, that he therefore must be an employee of the institute. Query: It is quite possible under the evidence that the sergeant was doing something to further his personal interest or for pure enjoyment, and was not at the time an employee within the meaning of the Workmen's Compensation

Act. See, Larson, Workmen's Compensation, vol. 1, § 47.41(c).

■ It would seem that the trial court, by its findings, determined that, in effect, the sergeant was a gratuitous worker, although such finding is not specific, but is apparent by the court's denial of the requested findings as submitted by appellant. There is no evidence that the flights were actually ordered by anyone. That they were "allowed" by the Department of Military Science and Tactics appears plain from the evidence, but there is not one word of proof that the institute itself either ordered or had any control over the flights. Actually, it was not shown that the institute had any firsthand knowledge of the flights, and it is apparent from the record that none of the officials of the institute itself knew, prior to the accident, that the plane rental for the November 21st flight was contained in the bill paid by Lance, along with the charge for the rental of the plane on the coaching flights. With respect to this, appellant asserts that the trial court erred in refusing to consider certain pencilled notations appearing on the bill rendered for the November flights. We see no error in this—the notations were made after the accident and had no bearing upon the issue of employment or non-employment.

■ ■ Allied to the problem of claimed employment is appellant's argument that the institute is estopped to deny such employment. However, there can be no estoppel as claimed, because one of the primary elements of estoppel is lacking. In order to create an estoppel, the party to be charged must have knowledge of all the material facts. See, Addison v. Tessier, 1957, 62 N.M. 120, 305 P.2d 1067; Davies v. Lahann (10th Cir. 1944), 145 F. 2d 656; and also Chambers v. Bessent, 1913, 17 N.M. 487, 134 P. 237; and State Nat. Bank of El Paso, Tex. v. Cantrell, 1943, 47 N.M. 389, 143 P.2d 592, 152 A.L. R. 1216. Here there is a complete lack of proof of knowledge of the material fact on the part of the officials of the institute that the tactical problem flight in November was either paid for by the institute, or that it was assumed by the parties that it would be paid for. Actually, the record only goes to the extent of showing that the November plane rental was paid for by Sergeant Lance, and we are not satisfied from the evidence that the institute in fact did pay for the one November tactical problem flight. There was no effort made to produce the institute records, which we assume would have positively shown whether or not such payment was in actuality made.

■ At the trial, the court refused to permit testimony as to a conversation be-

tween the deceased sergeant and the mother of the boy passenger in the fatal accident relating to the rental of the aircraft. The testimony was offered by appellant as a part of the res gestae, it being an attempt, by implication at least, to show that the sergeant was employed by the institute. The testimony was rejected as hearsay. Whether it might have been admissible under some other theory we need not determine, for certainly it was not an utterance pertaining to the manner or circumstances of the accident so as to be a part of the res gestae. The offer being on the res gestae theory alone, there was no error in the refusal. See, Wigmore on Evidence, (3d ed.) § 1750; McCormick on Evidence, §§ 272, 274; 67 A.L.R. 170; 150 A.L.R. 623, 627. See, also, Navajo Freight Lines v. Mahaffy, (10th Cir. 1949), 174 F.2d 305.

■ Appellant also offered to prove, again as a part of the res gestae, an exclamation made by the athletic coach on the occasion of viewing the body of the sergeant some two days after the accident. This offer was also intended to bolster the theory of employment claimed by appellant. However, the exclamation was not a spontaneous reaction to the occurrence, i. e., the plane crash, and therefore was not admissible. See, Navajo Freight Lines v. Mahaffy, supra; State v. Godwin, 1947, 51 N.M. 65, 178 P.2d

584, and cases cited therein; Otero v. Physicians & Surgeons Ambulance Serv., Inc., 1959, 65 N.M. 319, 336 P.2d 1070. Mere spontaneity upon seeing a gruesome sight does not bring an exclamation within the res gestae rule. It must be related to the occurrence itself, and, of course, there must be also some relationship in point of time. In any event, the exclamation really only related to the coaching flights, and, even if admissible under some theory, we do not believe would be of any benefit to the appellant.

■ One other matter is argued in the briefs, and this relates to the refusal of the trial court to hear the testimony of an accountant, as to the financial condition of Sergeant and Mrs. Lance, the theory being that the accountant would have testified that the sergeant would not have been financially able to rent the airplane if the school had not paid for it. The testimony was refused when the attorney for the institute stipulated that the rental of the plane, for the coaching flights only, was paid for by the institute. This was a discretionary matter, and we will not interfere with the discretion exercised by the trial court (compare Sturgeon v. Clark, 1961, 69 N.M. 132, 364 P.2d 757), even though, if by some stretch of the imagination which we do not comprehend, the testimony might have been admissible.

■ We would take this opportunity to observe that counsel for the appellant, by their brief, have made that which is no longer required, i.e., assignments of error. In addition, since the filing of the reply brief in this cause, appellant's attorneys have submitted an instrument entitled "Supplemental to Appellant's Briefs," and five separate letters, each of which gives citations of and quotations from cases, the vast majority of which were available at the time of the filing of the brief in chief. Our rule 15(2) (§ 21–2–1 (15) (2), N.M.S.A., 1953 Comp.) provides that there shall be a brief in chief, an answer brief, and a reply brief. There is no provision for the furnishing of supplemental material, except upon motion, properly made. The court has no objection, on the few occasions that it may occur, to being advised, through the clerk, of the citations of cases that may have been decided since the arguments on the merits, but we disapprove of and will in the future disregard attempts by counsel to supplement their briefs in a manner not authorized by the rules.

The judgment will be affirmed, and IT IS SO ORDERED.

CHAVEZ and NOBLE, JJ., concur.

COMPTON, C. J., and MOISE, J., not participating.